Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| ELIEZER SANTANA BÁEZ<br><br>Apelante<br><br>V.<br><br>ESTADO LIBRE ASOCIADO REP POR EL DEPARTAMENTO DE JUSTICIA, HON. LOURDES L. GÓMEZ TORRES, DPTO. CORRECCIÓN Y OTROS<br><br>Apelados | TA2026AP00495 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.:<br>BY2025CV05854<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 25 de junio de 2026.

Comparece ante nos la parte apelante, Eliezer Santana Báez (en adelante, parte apelante o señor Santana Báez), por derecho propio, o *In Forma Pauperis*, y nos solicita la revisión de la *Sentencia* emitida el 15 de abril de 2026, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Mediante esta, el foro primario desestimó con perjuicio la demanda presentada por la parte apelante.

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia* apelada.

### I

El 31 de octubre de 2025 el señor Santana Báez presentó una *Demanda Civil Al Amparo De La Regla 60 Procedimiento Civil* en contra del Estado Libre Asociado de Puerto Rico, la Honorable Lourdes L. Gómez Torres, el Departamento de Corrección y Rehabilitación (en adelante, DCR), y el señor Francisco Quiñones

Rivera (en adelante, y en conjunto, parte apelada).[1] En la misma, señaló que, desde el año 2004, ha formado parte de la población correccional ubicada en el Anexo 292 del Complejo Correccional de Bayamón. Planteó que, el pasado 11 de marzo de 2025, fue recluido en custodia máxima dentro de dicho complejo. Alegó que, conforme al Artículo 10 del *Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011*, Plan 2-2011, según enmendado, 3 LPRA Ap. XVIII, Art. 10, debió ser evaluado por el Comité de Clasificación y Tratamiento del DCR el 8 de septiembre de 2025, evaluación que sostiene que nunca se llevó a cabo. En vista de ello, arguyó que sufrió daños emocionales, y solicitó una indemnización ascendente a catorce mil quinientos dólares ($14,500.00), así como que se ordenara al DCR realizar la evaluación correspondiente.

Tras varios incidentes procesales impertinentes pormenorizar, el 13 de abril de 2026, la parte apelada presentó una *Moción de Desestimación*.[2] En síntesis, arguyó que la demanda dejaba de exponer un remedio, toda vez que la División de Remedios Administrativos del DCR tenía jurisdicción primaria sobre la reclasificación o cambios de custodia de la población correccional. Por ello, argumentó que el foro primario carecía de jurisdicción para atender el planteamiento y que el señor Santana Báez debía agotar primero los remedios administrativos. Asimismo, señaló que el remedio solicitado se concedió el 31 de diciembre de 2025, fecha en la que la parte apelante fue ubicada en custodia mediana. En consecuencia, alegó que el reclamo se tornó académico, y solicitó la desestimación con perjuicio de la demanda de epígrafe.

---

[1] Apéndice del recurso, Anejo 1, págs. 1-6.
[2] SUMAC del Tribunal de Primera Instancia, Entrada 24.

Así las cosas, el 16 de abril de 2025, el Tribunal de Primera Instancia notificó la *Sentencia* apelada.[3] En su dictamen, concluyó que la demanda presentada por la parte apelante no exponía una reclamación que justificara la concesión de un remedio. Añadió que carecía de jurisdicción para atender una solicitud de cambio de custodia, por entender que dicha facultad corresponde a la División de Remedios Administrativos del DCR, por lo que el señor Santana Báez debía agotar primero los remedios administrativos disponibles. El foro primario también concluyó que la controversia se tornó académica, toda vez que, el 31 de diciembre de 2026 se le concedió al apelante el cambio de custodia máxima a custodia mediana, según solicitado. Por ello, el foro *a quo* desestimó con perjuicio la *Demanda*.

Inconforme, el 12 de mayo de 2026, la parte apelante presentó el recurso de *Apelación Civil* ante nos. En el mismo, señala la comisión del siguiente error:

> Erró el TPI Bayamón al concluir que debía desestimarse la demanda porque no se agotaron los remedios administrativos ante la agencia, cuando un simple vista[z]o al expediente judicial ante sí, revelaba que sí se habían agotado, y con ellos como ap[é]ndices de la demanda es que se presentó la misma, por ello cometió abuso y erró el TPI.

Por su parte, el 16 de junio de 2026, compareció el Gobierno de Puerto Rico a través de la Oficina del Procurador General de Puerto Rico, mediante *Alegato del Estado*.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A. Doctrina de Agotamiento de Remedios

La doctrina de agotamiento de remedios administrativos responde a consideraciones de política pública. La aludida doctrina

---

[3] *Íd.,* Entrada Núm. 26.

es de creación jurisprudencial en atención a las necesidades de competencia administrativa y orden en los procedimientos. *Mercado Vega* v. *U.P.R.,* 128 DPR 273, 282 (1991). Su propósito es evitar que los tribunales intervengan innecesaria e inoportunamente en el trámite del proceso administrativo. *Igartúa De La Rosa* v. *A.D.T.*, 147 DPR 318, 331 (1998); *Delgado Rodríguez* v. *Nazario de Ferrer*, 121 DPR 347, 355 (1988). Por su parte, en *Gervasio Rivera* v. *E.L.A.*, 121 DPR 582, 595 (1988), el Tribunal Supremo de Puerto Rico señaló que:

> La doctrina también facilita la revisión judicial y asegura que los tribunales tengan información más precisa sobre los fundamentos de la actuación gubernamental, pudiendo así tomar una decisión más informada sobre el recurso instado. Como la Asamblea Legislativa expresamente ha delegado en las agencias poderes para resolver en primera instancia los asuntos sometidos, la norma también promueve el designio legislativo, así como la distribución adecuada y más eficiente de tareas entre los poderes judiciales y ejecutivos. Por último, esta doctrina libera a los tribunales de asuntos que pueden ser resueltos administrativamente. (Citas omitidas).

Ahora bien, el trámite administrativo y el requisito de agotar los remedios puede preterirse si: 1) el remedio provisto por la agencia es inadecuado; 2) se pudiera producir un daño irreparable al promovente y en el balance de los intereses envueltos no justifica agotarlos; 3) en la acción judicial se alega violación sustancial de derechos constitucionales; o, 4) hay clara ausencia de jurisdicción en la agencia administrativa, entre otras. *Asos. Pesc. Pta. Figueras* v. *Pto. del Rey*, 155 DPR 906, 917 (2001). (Énfasis suplido.) De igual forma, la Sección 4.3 de la Ley de Procedimiento Administrativo Uniforme, 3 LPRA sec. 2173, establece lo siguiente:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado; o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales; o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en

los procedimientos; o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa.

A la par con la doctrina de agotamiento de remedios administrativos, coexiste la doctrina de jurisdicción primaria. Ambas doctrinas están estrechamente relacionadas, pero son distintas entre sí. En cuanto a la doctrina de jurisdicción primaria, se ha resuelto que la misma no priva de jurisdicción al foro judicial, sino que dispone qué foro debe atender inicialmente una controversia. *CBS Outdoor* v. *Billboard One, Inc. et al.*, 179 DPR 391, 404 (2010). Igualmente, y más importante aún, la doctrina de jurisdicción primaria requiere que los tribunales exploren el alcance de la ley habilitadora de la agencia en cuestión, para determinar si la controversia planteada está dentro del ámbito de jurisdicción de dicha agencia. *Consejo de Titulares v. Gómez Estremera et al.,* 184 DPR 407 (2012).

**B. *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional, Reglamento Núm. 8583.***

El *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional*, Reglamento Núm. 8583 fue creado a tenor con la Ley Pública Núm. 96-2476-(H.R.-10) *Civil Rights of Institutionalized Peron Act*, aprobado por el Congreso de los Estados Unidos el 23 de mayo de 1980, 42 USC 1997 *et seq.* El referido estatuto provee para la creación y desarrollo de un organismo administrativo que promueva que cada institución correccional resuelva efectivamente los reclamos de la población correccional. *Introducción* del Reglamento Núm. 8583, *supra,* pág. 1. Esta ley es extensiva al Estado Libre Asociado de Puerto Rico. La Ley Pública Núm. 96-2476-(H.R.-10), *supra,* tiene como objetivo principal que toda persona recluida en una institución correccional disponga de un

organismo administrativo ante el cual pueda presentar una solicitud de remedio con el propósito de minimizar las diferencias entre los miembros de la población correccional y el personal para evitar o minimizar la radicación de pleitos en los tribunales. *Íd.,* págs. 1-2.

A estos fines, se creó la División de Remedios Administrativos "[p]ara atender cualquier queja o agravio que pudieran tener los confinados en contra del Departamento de Corrección y Rehabilitación o sus funciones sobre cualquier asunto". *Íd.* La División de Remedios Administrativos es un organismo administrativo que tiene como objetivo principal que los confinados puedan presentar una solicitud de remedio en su lugar de origen. *Íd.,* pág. 3.

El Reglamento Núm. 8583, *supra*, se aplica a todos los miembros de la población correccional y a todos los empleados del Departamento de Corrección y Rehabilitación, respecto al cumplimiento de sus deberes y obligaciones. Este reglamento, faculta a la División de Remedios Administrativos para atender todo lo relacionado con el funcionamiento de este en las instituciones correccionales. Regla V del Reglamento Núm. 8583, *supra*. Por otro lado, establece que la División de Remedios Administrativos ostentará jurisdicción para atender aquellas solicitudes de remedio interpuestas por los miembros de la población correccional en cualquier institución o facilidad correccional donde se encuentre extinguiendo sentencia y "que esté, relacionada directa o indirectamente con actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad personal o en su plan institucional". Regla VI del Reglamento Núm. 8583, *supra*.

La División de Remedios Administrativos cuenta con un procedimiento para atender las solicitudes de remedios instadas por la población correccional. En las Reglas XII-XV se establecen los

estándares y procedimientos para la radicación y contestación de solicitudes de remedio. Reglamento Núm. 8583, *supra.*

En lo pertinente, la Regla XIV de dicho estatuto establece que, de estar en desacuerdo con la determinación que en su día emita la División de Remedios Administrativos, el miembro de la población correccional podrá solicitar la revisión de la respuesta mediante una petición de reconsideración ante el Coordinador. De estar inconforme con la determinación que se emita por el Coordinador, o de transcurrir el término dispuesto por el aludido Reglamento para adjudicar la solicitud, la Regla XV dispone lo siguiente:

> 1.	El miembro de la población correccional podrá solicitar revisión ante el Tribunal de Apelaciones, dentro del término de treinta (30) días calendarios, contados a partir de la fecha del archivo en autos de la copia de la Notificación de la Resolución de Reconsideración, emitida por el Coordinador de Remedios Administrativos o noventa (90) días a partir de la radicación de la Solicitud de Reconsideración acogida, si la Agencia no actúa conforme a la misma.
>
> […].

## C. *Moción de Desestimación*

La Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, faculta a la parte contra la cual se presente una alegación en su contra a presentar una moción de desestimación, por los fundamentos siguientes: 1) falta de jurisdicción sobre la materia; 2) falta de jurisdicción sobre la persona; 3) insuficiencia del emplazamiento; 4) insuficiencia del diligenciamiento del emplazamiento; 5) dejar de exponer una reclamación que justifique la concesión de un remedio, y 6) dejar de acumular una parte indispensable. *Inmob. Baleares et al. v. Benabe et al.*, 214 DPR 1109, 1128 (2024); *Blassino, Reyes v. Reyes Blassino*, 214 DPR 823, 833 (2024); *Costas Elena y otros v. Magic Sports y otros*, 213 DPR 523, 533 (2024); *Cobra Acquisitions v. Mun. Yabucoa et al*, 210 DPR 384, 396 (2022); *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013). La

precitada regla permite a la parte demandada presentar una moción de desestimación debidamente fundamentada previo a contestar la demanda instada en su contra. *Conde Cruz v. Resto Rodríguez et. al.*, 205 DPR 1043, 1065 (2020); *Casillas Carrasquillo v. ELA*, 209 DPR 240, 247 (2022). Cuando se presenta una moción de desestimación al amparo de la Regla 10.2(5), la desestimación pretendida se refiere a los méritos de la controversia y no a los aspectos procesales del caso. *BPPR v. Cable Media*, 2025 TSPR 1, 215 DPR __ (2025).

Al momento de considerar una moción de desestimación, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y, a su vez, considerarlos de la forma más favorable a la parte demandante. *Cobra Acquisitions v. Mun. Yabucoa et al*, supra, pág. 396; *Costas Elena y otros v. Magic Sports y otros*, supra, pág. 533; *Blassino, Reyes v. Reyes Blassino*, supra, pág. 833; *Casillas Carrasquillo v. ELA*, supra, pág. 247; *BPPR v. Cable Media,* supra; *Cruz Pérez v. Roldán Rodríguez et al.*, 206 DPR 261, 267 (2021); *Colón Rivera et al. v. ELA*, supra, pág. 1049. Luego, le corresponde determinar si, a base de los hechos aceptados como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. *Costas Elena y otros v. Magic Sports y otros*, supra, pág. 534. Si el Tribunal entiende que no se cumple con el estándar de plausibilidad, se debe desestimar la demanda, pues no debe permitir que proceda una reclamación insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba. *Íd.,* Véase, además, R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6.a ed., San Juan, Ed. LexisNexis, 2017, pág. 307.

Es por lo que, para que proceda una moción de desestimación, "tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de

[D]erecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor".[4] *Cobra Acquisitions v. Mun. Yabucoa et al*, supra, pág. 396; *Casillas Carrasquillo v. ELA*, supra, pág. 247; *Cruz Pérez v. Roldán Rodríguez*, supra, págs. 267-268; *BPPR v. Cable Media*, supra; *Díaz Vázquez et al. v. Colón Peña et al.*, supra, pág. 1150; *Blassino, Reyes v. Reyes Blassino*, supra, pág. 833. Bajo este criterio, procederá la desestimación de la demanda si aun interpretando la reclamación de forma liberal, no hay remedio alguno disponible en el estado de Derecho. *Íd.*; *BPPR v. Cable Media*, supra.

Nuestra más Alta Curia ha reiterado que, una demanda no deberá ser desestimada a menos que la razón para solicitar el remedio no proceda bajo supuesto de derecho alguno, ni pueda ser enmendada con el propósito de subsanar cualquier posible deficiencia. *Díaz Vázquez et al. v. Colón Peña et al.*, supra, pág. 1150.

### D. *Responsabilidad Civil Extracontractual*

Como sabemos, en nuestro ordenamiento jurídico, la responsabilidad civil extracontractual emana del Artículo 1536 del Código Civil de Puerto Rico 2020, 31 LPRA sec. 10801 *et seq.*, que dispone que la persona que por culpa o negligencia cause daño a otra, viene obligada a repararlo. *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465 (2022); *Colón Santos v. Coop. Seg. Mult. P.R.* 173 DPR 170,177 (2008).

Para que prospere una reclamación por daños y perjuicios al amparo del referido precepto legal, se requiere la concurrencia de tres elementos, los cuales tienen que ser probados por la parte demandante: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) el daño real causado al reclamante. *Cruz Flores et*

---

[4] *Ortiz Matías et al. v. Mora Development*, 187 DPR 649, 654 (2013*); López García v. López García*, 200 DPR 50, 69-70 (2018).

*al. v. Hosp. Ryder et al.,* supra, págs. 483-484; *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010).

El daño constituye el menoscabo material o moral que sufre una persona, ya sea en sus bienes vitales naturales, en su propiedad o en su patrimonio, causado en contravención a una norma jurídica y por el cual ha de responder otra persona. En nuestro ordenamiento jurídico se reconoce la existencia de dos tipos de daños: los especiales, conocidos como daños físicos, patrimoniales, pecuniarios o económicos, y los generales, conocidos como daños morales. *Nieves Díaz v. González Massas*, supra, pág. 843.

La culpa o negligencia es falta del debido cuidado, esto es, no anticipar ni prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en tales circunstancias. *Montalvo v. Cruz,* 144 DPR 748, 755 (1998).

Cónsono con lo anterior, a través de la jurisprudencia observamos que un elemento esencial de la responsabilidad civil extracontractual es el factor de la previsibilidad. El deber de previsión no se extiende a todo riesgo posible, pues, es necesario examinar si un daño pudo ser el resultado natural y probable de un acto negligente. *Cruz Flores et al. v. Hosp. Ryder et al.,* supra, pág. 484. Para determinar si el resultado era razonablemente previsible, es preciso acudir a la figura del hombre prudente y razonable, también conocida como el buen padre de familia, que es aquella persona que actúa con el grado de cuidado, diligencia, vigilancia y precaución que exigen las circunstancias. *Nieves Díaz v. González Massas, supra*, pág. 844. Si el daño es previsible por éste, hay responsabilidad; sino es previsible, estamos generalmente en presencia de un caso fortuito. *Montalvo v. Cruz*, supra, pág. 756.

El deber de cuidado incluye, tanto la obligación de anticipar, como la de evitar la ocurrencia de daños, cuya probabilidad es

razonablemente previsible. El deber de anticipar y prever los daños no se extiende a todo riesgo posible. *Íd.* Lo esencial en estos casos es que se tenga el deber de prever en forma general consecuencias de determinada clase. Sobre este particular, el Tribunal Supremo de Puerto Rico, ha sido enfático al expresar que sin la existencia de este "deber de cuidado mayor" no puede responsabilizarse a una persona porque no haya realizado el acto de que se trate. *Hernández v. Televicentro*, 168 DPR 803, 813-814 (2006).

Ahora bien, el elemento de la previsibilidad se halla íntimamente relacionado al segundo requisito: el nexo causal. En Puerto Rico rige la teoría de la causalidad adecuada, la cual postula que "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general". *Cruz Flores et al. v. Hosp. Ryder et al.,* supra, págs. 484-485. En *Rivera v. S.L.G. Díaz*, 165 DPR 408, 422 (2005), nuestro más Alto Foro señaló que la relación causal, elemento imprescindible en una reclamación en daños y perjuicios, es un elemento del acto ilícito que vincula al daño directamente con el hecho antijurídico. *Nieves Díaz v. González Massas,* supra, págs. 844-845. Conforme con lo anterior, un daño podrá ser considerado como el resultado probable y natural de un acto u omisión negligente si luego del suceso, mirándolo retroactivamente, éste parece ser la consecuencia razonable y común de la acción u omisión de que se trate. *Hernández v. Televicentro*, supra, pág. 814; *Cruz Flores et al. v. Hosp. Ryder et al.,* supra, pág. 485.

Para establecer la relación causal necesaria, no es suficiente que un hecho aparente ser condición de un evento, si éste regularmente no trae aparejado ese resultado. Esta normativa ha sido fundamentalmente desarrollada con el propósito de limitar la responsabilidad civil a aquellos casos en que la ocurrencia de un

hecho dañoso sea imputable moralmente a su alegado autor, porque éste era una consecuencia previsible o voluntaria del acto negligente. *Soto Cabral v. E.L.A.*, 138 DPR 298, 317 (1995).

Al aplicar el principio de la causalidad adecuada, el Tribunal Supremo de Puerto Rico expresó que "la difícil determinación de cuándo existe nexo causal entre el daño producido por un acto delictivo de un tercero y la omisión de cumplir con la obligación de tomar precauciones, medidas de seguridad y protección, no puede 'resolverse nunca de una manera plenamente satisfactoria mediante reglas abstractas, sino que en los casos de duda ha de resolverse por el juez según su libre convicción, ponderando todas las circunstancias'." *J.A.D.M. v. Centro Comercial de Plaza Carolina*, 132 DPR 785, 796 (1993).

Esbozada la norma jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

### III

En el presente caso, la parte apelante sostiene que el Tribunal de Primera Instancia erró al desestimar con perjuicio la *Demanda* de epígrafe tras concluir que el señor Santana Báez debía agotar los remedios administrativos provistos por nuestro ordenamiento jurídico antes de acudir al foro judicial. Surge, además, del dictamen recurrido que el foro primario fundamentó su determinación en que la *Demanda* no contenía alegaciones que justificaran la concesión de un remedio y en que la controversia se tornó académica, toda vez que, el remedio solicitado se concedió por el DCR el 31 de diciembre de 2025. Examinado el expediente ante nuestra consideración, así como el derecho aplicable, concluimos que no le asiste la razón a la parte apelante.

En primer lugar, atenderemos el fundamento relacionado con la insuficiencia de las alegaciones contenidas en la demanda. Conforme a la Regla 10.2(5) de las de Procedimiento Civil, *supra,*

procede la desestimación de una reclamación cuando esta no expone hechos que justifiquen la concesión de un remedio. Al evaluar una solicitud de esta naturaleza, el tribunal debe dar por ciertos todos los hechos bien alegados y examinarlos de la manera más favorable a la parte demandante. Sin embargo, ello no exime a la parte promovente de cumplir con el estándar mínimo de plausibilidad requerido para sostener una causa de acción. Así, cuando de las alegaciones surge con certeza que el demandante no tendría derecho a remedio alguno bajo cualquier conjunto de hechos que pudiese probarse en apoyo de su reclamación, procede la desestimación del pleito.

En el ejercicio de nuestra función revisora, hemos examinado la *Demanda* presentada por el señor Santana Báez bajo el referido estándar. De dicho análisis concluimos que el pliego no establece una reclamación que justifique la concesión del remedio solicitado. Aunque la parte apelante reclamó una indemnización ascendente a catorce mil quinientos dólares ($14,500.00) por daños emocionales, sus alegaciones no describen hechos que permitan inferir que sufrió los mismos como consecuencia de actos u omisiones culposas o negligentes atribuibles a la parte apelada. Por el contrario, el núcleo de su reclamación gira en torno a su interés de ser evaluado por el Comité de Clasificación y Tratamiento, al igual que a la solicitud de una reclasificación de custodia. Tales controversias recaen, en primera instancia, dentro del ámbito de competencia administrativa del DCR.

Aún si se obviara la insuficiencia de las alegaciones, el resultado sería el mismo. Del expediente surge que el señor Santana Báez no agotó adecuadamente los remedios administrativos disponibles antes de instar la presente acción. La parte apelante sostiene que cumplió con dicho requisito mediante la presentación de varias solicitudes ante la División de Revisión Administrativa del

DCR. No obstante, el Reglamento Núm. 8583, *supra*, dispone que todo miembro de la población correccional inconforme con la determinación final emitida por dicha dependencia podrá solicitar revisión judicial ante este Tribunal. Sin embargo, nada en el expediente demuestra que el señor Santana Báez haya recurrido oportunamente ante este foro para impugnar las determinaciones emitidas por la agencia. En consecuencia, coincidimos con el Tribunal de Primera Instancia en que la parte apelante incumplió con el requisito de agotamiento de remedios administrativos que exige nuestro ordenamiento jurídico para controversias de esta naturaleza.

De todos modos, el expediente ante nuestra consideración revela que el remedio que originalmente perseguía la parte apelante fue concedido el 31 de diciembre de 2025, cuando el señor Santana Báez fue reclasificado de custodia máxima a custodia mediana.[5] Por ello, aún de existir una controversia justiciable al momento de la presentación de la *Demanda*, la misma se tornó académica al desaparecer el interés real y efectivo sobre el cual este Tribunal pudiera conceder un remedio práctico. En consecuencia, concluimos que el Tribunal de Primera Instancia no incidió al desestimar con perjuicio la *Demanda* presentada por el señor Santana Báez, por lo que procede confirmar la *Sentencia* apelada.

**IV**

Por los fundamentos antes esbozados, se *confirma* la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[5] *Véase*, Apéndice del recurso, Anejo 4, pág. 5.